**Employers' Liability Assurance Corporation, Ltd., a Corporation, Plaintiff-Appellee, v. Coronet Insurance Company, a Corporation, Defendant-Appellant.**

Gen. No. 52,868.

First District.

February 10, 1969.

Haft, Shapiro & Haft, of Chicago (Morris A. Haft, of counsel), for appellant.

Teller, Levit & Silvertrust, of Chicago (Howard M. Turner, of counsel), for appellee.

ALLOY, P. J.

The present action was instituted on a judgment entered in the State of Louisiana in favor of plaintiff, Employers' Liability Assurance Corporation, Ltd., against defendant, Coronet Insurance Company, a corporation. The action was nominally to register the Louisiana judgment and to recover a new Illinois judgment thereon.

The background of the Louisiana judgment arose from the circumstance that Milton Cryer was insured with Coronet Insurance Company. On December 27, 1964, he was involved in an automobile accident with an automobile driven by David Alford and owned by James Alford, who were both residents of Louisiana. Two passengers were injured in the Alford car. Cryer died as a result of his injuries. James Alford was insured with plaintiff, Employers' Liability Assurance Corporation, Ltd., and this policy provided uninsured motorists' coverage.

The record disclosed that Employers', by mistake, determined that Cryer was not insured, so they paid James Alford $2,625 for the loss to his automobile and paid $1,150 for settlement of the two injury claims to passengers in the Alford automobile. This made a total paid out of $3,775. When Employers' insurance company found out that Cryer actually was insured with Coronet Insurance Company, Employers' brought suit against Coronet Insurance Company and the administrator of the Cryer Estate. The action was instituted in Louisiana by Employers' as subrogee of the car owner and the injured passengers. A Louisiana statute allowed a direct action to be filed as against Coronet Insurance Company. While Coronet first appeared specially in Louisiana, the Louisiana court obtained jurisdiction over Coronet when Coronet eventually defended the action. The Louisiana court entered judgment against Coronet for $3,775 on October 12, 1966, but there was no judgment entered against the Milton Cryer Estate or as against the widow of Milton Cryer individually.

The Coronet Insurance Company policy which insured Cryer, contained the following clauses which are relevant in the instant case:

"1. No person or organization shall have any right under this policy to join the company as a party to any action against the insured to determine the insured's liability, nor shall the company be impleaded by the insured or his legal representative.

"2. No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company."

The Louisiana statute which permitted direct actions against insurance companies, provided in part as follows:

"No policy or contract of liability shall be issued or delivered in this state, unless it contains provisions to the effect that . . . . The injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Art 42, Code of Civil Procedure. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether

27

or not such policy contains a provision for bidding such direct action, provided the accident or injury occurred within the State of Louisiana."

██ Illinois statutory law prohibits actions directly against an insurance company and the pertinent provisions of the Illinois statute are as follows: (1967 Ill Rev Stats, c 73, § 1000–Insurance Code)

> "No policy of insurance against liability or indemnity for loss or damage to any person other than the insured, or to the property of any other than the insured, for which any insured is liable, shall be issued or delivered in this State . . . unless it contains in substance a provision that in case execution against the insured is returned unsatisfied in any action brought by the injured person . . . an action may be maintained by the injured person . . . against such company . . . for the amount of the judgment in such action not exceeding the amount of the policy."

The effect of such provision in the State of Illinois is that there can be no direct action unless a judgment is first obtained against the insured.

It is also noted that under the Illinois Civil Practice Act, c 110, § 25(2) (1967 Ill Rev Stats), which deals with the problem of bringing in additional parties to a lawsuit, there is a provision:

> "Nothing herein applies to liability insurers or creates any substantive right to contribution among tort-feasors or against any insurer or other person which has not heretofore existed."

After the judgment for $3,775 had been obtained in Louisiana, Employers' filed a petition in Cook County, Illinois, to register the foreign Louisiana judgment. This proceeding is authorized under 1967 Ill Rev Stats, c 77, §§ 88–105. Defendant, Coronet, answered the petition to register the Louisiana judgment in Illinois and

28

contended that such judgment should not be so registered or judgment entered on it. In Paragraph 6 of the answer of Coronet, it is specifically alleged that the judgment entered in the State of Louisiana is based upon a claim, the grounds of which are repugnant to the basic policy to the State of Illinois, and also that such action was brought contrary to the terms of the casualty policy issued by defendant and pursuant to a statute and the laws of the State of Louisiana, so that in truth and in fact, this action was brought upon such statute and not for the registration of judgment as the pleadings would have it appear. Employers', in the Illinois action for registration of the Louisiana judgment, filed a motion to strike defendant's amended answer to the petition to register the judgment. Upon the hearing held in Cook County, all of the Louisiana pleadings were presented to the trial court. At the conclusion of the hearing, the trial court in Illinois stated that from the pleadings it appeared that defendant had submitted to the jurisdiction of the court in Louisiana, and the court then sustained the motion to strike defendant's answer and entered an order directing judgment in the sum of $4,032.25, plus costs of suit.

On appeal in this Court, defendant Coronet asserts that the action brought in the cause is a direct action as against the defendant and in violation of the policy provisions and the statutory law of Illinois; that it violates the public policy of the forum and; likewise, that the Louisiana direct action statute is procedural rather than substantive in character. It is also contended that the judgment rendered in Louisiana is not entitled to be registered in Illinois under the full faith and credit clause of the United States Constitution. Coronet further contends that the filing of a petition for registration of the foreign decree by the subrogee constitutes a direct action as against the defendant contrary to the policy terms and violates the public policy of the State of Illinois.

Cases cited by Coronet in support of its contention involve situations where the original action was begun either in the State of Illinois or in another State which prohibited direct actions as against insurance companies. In such cases there was an attempt to apply the law of some other state which allowed such direct action and the courts in this State refused to apply the foreign law on the ground that it was opposed to Illinois public policy. Marchlik v. Coronet Ins. Co., 40 Ill2d 327, 239 NE2d 799, to which defendant referred in its brief, was a case of this type. In the Marchlik case the Illinois court concluded that the direct action statute of Wisconsin was substantive law but that it was not applied in Illinois in an action directly against insurance companies because, as the court said, at page 332, "An examination of Illinois law and customs will, we believe, demonstrate that entertaining direct action suits is contrary to a firmly-fixed public policy."

Defendant also cites a number of cases concluding that the Louisiana direct action statute is procedural, thus requiring that the law of the forum be applied to prohibit direct actions against insurance companies. It is noted, however, that these cases are applicable to the instant case *only if* the proceedings in Illinois to register the judgment can be held to be an original direct action against an insurance company. The other Illinois cases cited by defendant, Pohlman v. Universal Mut. Cas. Co, 12 Ill App2d 153, 138 NE2d 848, Piper v. State Farm Mut. Automobile Ins. Co., 1 Ill App2d 1, 116 NE2d 86, and Millsap v. Central Wisconsin Motor Transp. Co., 41 Ill App2d 1, 189 NE2d 793, all involved situations where part of the transaction took place in a foreign state and the initial action was begun in Illinois. There was an attempt to apply, in Illinois, the direct action statute of the other state. The cases are, therefore, distinguishable from the present situation. The initial filing in the case before us, and the proceeding following such filing, was in

Louisiana. When plaintiff Employers' came to Illinois they already had a judgment against Coronet, and the action in Illinois was not a direct action against Coronet under the direct action statute of Louisiana but was a proceeding on a Louisiana judgment in Illinois. The original action in Louisiana merged into or became part of the Louisiana judgment, and when the judgment came before the court in Illinois, it had the character of a Louisiana money judgment and was not a direct action in Illinois as against defendant insurance company. While defendant recites the general principle that the merger of a cause of action in a judgment does not mean annihilation or discharge of the debt so as to preclude examination of its character or nature for all purposes, we believe that for the purpose of an action on a foreign judgment in Illinois the court will not look behind the judgment itself to examine the nature of the cause of action.

Since the proceedings in Illinois to register the Louisiana judgment was not a direct action under the Louisiana statute against an Illinois insurance company, the next question is whether the Louisiana judgment is entitled to full faith and credit in Illinois. Defendant contends that it is not entitled to such full faith and credit, because Illinois courts have the right to decide which foreign laws will be enforced in Illinois. To sustain defendant's position, defendant cites three Illinois cases (Wall v. Chesapeake & O. Ry., 290 Ill 227, 125 NE 20; Whitney v. Madden, 400 Ill 185, 79 NE2d 593; Campbell v. Albers, 313 Ill App 152, 39 NE2d 672). All of these cases involved an original proceeding in Illinois and the question which was presented was whether Illinois should have applied the law of a sister state. None of these cases involved the question of giving full faith and credit in Illinois to court proceedings already concluded in another sister state. The Wall case presented the question of whether the Illinois courts would allow a wrongful death action in Illinois based on an Ohio statute, with the death having

31

taken place in Ohio. The Illinois court said (at page 230) that a " . . . right which has accrued under a statute of a sister State of this Union will be enforced in the courts of this State unless prohibited by law . . . ." An Illinois act prohibits such action for a death occurring outside the State. The court was referring to the question of whether Illinois would apply the Ohio statute in an original proceeding begun in Illinois and this case cannot be cited as a basis for refusing to give full faith and credit in this State to Ohio court proceedings. The same conclusion must be stated as to the Whitney case where the Illinois court refused to take jurisdiction of a lawsuit involving nonresidents on the theory of forum non conveniens. The Campbell case also involved an Illinois proceeding where the question was the application of an Idaho statute. We must, therefore, conclude that we find no authority nor has any been cited to us which operates as a precedent for rejecting the action on the Louisiana judgment in the case before us.

 The case of Fauntleroy v. Lum, 210 US 230, which was cited by the plaintiff, would appear to outline the correct rule which is applicable in the case before us. In the Fauntleroy case, an action was begun in Missouri based upon matters which had occurred in Mississippi. A judgment was obtained in the Missouri court in favor of plaintiff and defendant appeared and defended in this Missouri suit. The plaintiff there then brought an action in Mississippi based upon the Missouri judgment. Defendant argued that the Mississippi court should not enforce the Missouri judgment because the transaction had occurred in Mississippi and that under the Mississippi law this amounted to gambling on cotton futures and was illegal in Mississippi. The Mississippi court refused to enforce the Missouri judgment. The United States Supreme Court reversed and specified that the Missouri judgment was entitled to full faith and credit in the

Mississippi court. The Supreme Court in such case said (at pages 236, 237) :

"The doctrine laid down by Chief Justice Marshall was 'that the judgment of a state court should have the same credit, validity, and effect in every other court in the United States, which it had in the State where it was pronounced, and that whatever pleas would be good to a suit thereon in such State, and none others, could be pleaded in any other court of the United States.'

". . .

"Whether the award would or would not have been conclusive, and whether the ruling of the Missouri court upon that matter was right or wrong, there can be no question that the judgment was conclusive in Missouri on the validity of the cause of action. Pitts v. Fugate, 41 Missouri 405; State v. Trammel, 106 Missouri 510; In re Copenhaver, 118 Missouri 377. A judgment is conclusive as to all the media concludendi, United States v. California & Oregon Land Co., 192 US 355; and it needs no authority to show that it cannot be impeached either in or out of the State by showing that it was based upon a mistake of law. Of course a want of jurisdiction over either the person or the subject-matter might be shown."

■ It is apparent that this is the situation in the present case. Just as the law of Mississippi disclosed that the transaction in the Fauntleroy case was gambling and contrary to Mississippi public policy, Illinois might also contend that direct actions against insurance companies are contrary to Illinois public policy. This argument was not accepted in the Fauntleroy case where the Mississippi court failed to enforce the Missouri judgment in Mississippi, nor can it be approved in the case before us as a

33

ground for refusing in Illinois to enforce the Louisiana judgment in its court. Kenny v. Supreme Lodge, 252 US 411, cited by plaintiff, also supports this conclusion.

Defendant argues in this court that the original action in Illinois could not have been maintained as against the insurance company on the basis of the Louisiana statute. We agree that this is so. Defendant then proceeds to contend that since this is so, plaintiff should not be allowed to do indirectly what he is forbidden to do directly. We cannot agree with this conclusion for the reason that this procedure is exactly what has been recognized as appropriate in a number of cases. In Roche v. McDonald, 275 US 450, the statute of limitations in the State of Washington, prevented the enforcement of a Washington judgment. The plaintiff there proceeded in Oregon and filed a new action on the Washington judgment and obtained a new Oregon judgment. The plaintiff then filed an action on this new Oregon judgment back in Washington, and the court held that since the Oregon court had jurisdiction of the parties and the subject matter, its judgment was valid and binding in Washington. The fact that a similar judgment could not have been obtained by direct action in Washington was not controlling. Thereby, in effect, plaintiff did indirectly, by going to Oregon, what he could not do directly by proceeding in Washington.

It is apparent, therefore, that the public policy of the State of Illinois as expressed in the statute and as applied in the case before us, is not to be considered when a party proceeds in Illinois to register a judgment obtained in a foreign state. In Morris v. Jones, 329 US 545, at page 551, the court said:

> "Such a judgment obtained in a sister state is, with exceptions not relevant here . . . entitled to full faith and credit in another state, though the underlying claim would not be enforced in the State of the forum . . . . The full faith and credit to which a

34

judgment is entitled is the credit which it has in the State from which it is taken, not the credit that under other circumstances and conditions it might have had."

A question was also raised in this cause as to whether an order was entered in the Illinois proceeding registering the judgment. Under 1967 Ill Rev Stats, c 77, § 94, it is obvious that no court order is necessary to register a foreign judgment. That act provides that:

". . . if the court after hearing has refused to set the registration aside, the registered judgment shall become a final judgment of the court in which it is registered, binding personally upon the defendant."

The judgment in the cause before us was registered by the filing of the petition. Following a hearing, the court entered a new personal judgment in accordance with the prayer of the petition, having found that there was no reason to set aside the registered judgment. The judgment, therefore, became final and appealable. The complaint prayed for a new Illinois judgment based upon the judgment of Louisiana. Such right of action exists under the laws of the State of Illinois.

Since the judgment which was entered in Louisiana is entitled to full faith and credit under the United States Constitution, and the public policy of Illinois does not prevent or prohibit such judgment being given such full faith and credit, we must conclude that the trial court correctly sustained the motion to strike the amended answer and likewise was justified in entering the judgment in this cause.

The judgment of the Circuit Court of Cook County is, therefore, affirmed.

Affirmed.

STOUDER and SCHEINEMAN, JJ., concur.