*In re* MARRIAGE OF GLORIA SPIZZO, n/k/a Gloria Langman, and ROBERT A. SPIZZO (Robert A. Spizzo *et al.*, Petitioners-Appellees, v. Gloria Langman *et al.*, Respondents-Appellants).

Second District   No. 2—87—0616

Opinion filed April 19, 1988.

Aldo E. Botti, John R. Wimmer, and Lee A. Marinaccio, all of Botti, Marinaccio, DeSalvo & Pieper, Ltd., of Oak Brook, for appellants.

No brief filed for appellees.

JUSTICE NASH delivered the opinion of the court:

Gloria Langman (wife) and her attorney, Lee A. Marinaccio, appeal from orders of the circuit court of Du Page County which awarded costs and attorney fees against them in favor of Robert A. Spizzo (husband), the guardian *ad litem* of the minor child, Robert Spizzo, Jr., and the child's paternal grandparents, Amelio and Celidea Spizzo, after a mistrial was declared by the court during a hearing of post-judgment petitions relating to visitation with the child by the husband and grandparents.

No appellee brief has been filed to assist this court, and we consider the appeal under the standards of *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493.

The wife's petition for dissolution of marriage was granted in May 1982, and in September 1982 a judgment was entered which incorporated a marital settlement agreement. The settlement agreement provided that the wife have custody of their minor child, subject to the right of reasonable visitation by the husband. A dispute subsequently arose regarding the husband's right to visitation which resulted in numerous post-judgment proceedings.

On January 26, 1987, Judge Robert Cox commenced a combined hearing of the husband's petition to enforce visitation, the wife's petition to modify judgment by terminating visitation, a petition by the guardian *ad litem* of the child to modify or deny visitation, and four rules to show cause which had been entered by the court against the wife. At the outset of the proceedings, attorney Marinaccio, counsel for the wife, stated that his client had instructed him to orally move for a change in venue, because the wife felt that the judge could not give her a fair hearing. When attorney Marinaccio offered to put his motion in writing, the judge stated that if such a motion were filed it would be denied, and the parties then proceeded to a pretrial confer-

ence and a hearing in which several witnesses testified that day.

When the case was called for continuation of the hearing on the following morning, the wife's attorney informed Judge Cox that his client had caused a letter to be delivered to the Judicial Inquiry Board and, although counsel did not know the content or purpose of the letter, he felt he had an obligation to the judge to inform him of his client's letter. Later in the proceedings, the following colloquy occurred:

> "THE COURT: Before recessing, however, Mr. Marinaccio and Miss Langman—
>
> MR. MARINACCIO: Yes, your Honor.
>
> THE COURT: —I have been pondering your opening remarks this morning. I want the record to reflect certain aspects of your opening remarks.
>
> First of all, before commencing this action on this particular petition, the hearing on it yesterday, Mr. Marinaccio indicated to me that Miss Langman wished him to present an oral motion for a substitution of Judge in this matter on the basis that she felt that I was prejudiced against her. At that time I denied the motion and suggested to Mr. Marinaccio that if he wished to, he could put that motion in writing and present it to me. No such written motion has been presented to me.
>
> Therefore, I do not know the basis upon which at this point in time Miss Langman is indicating that I have prejudices against her. So, it is impossible for me to respond to the statement that Miss Langman has at some time or another presented to the Judicial Inquiry Board a complaint about me. Therefore, I can only presume that the reason for her informing me of that or having her attorney inform me of that is that she wishes the record to further disclose that her feelings are that I am prejudiced against her. The only other possible explanation is that she and Mr. Marinaccio are creating a record for purposes of either appeal or having me disqualified.
>
> Thank you.
>
> MR. MARINACCIO: May I comment, your Honor?
>
> THE COURT: No."

Following a recess, Judge Cox *sua sponte* declared a mistrial, as follows:

> "After further consideration of the actions of Mr. Marinaccio regarding his announcing during the trial of this cause and after making an oral motion for a substitution of judge on the basis of prejudice, although with leave of Court to file the written motion which by reason of the Civil Practice Act and the Su-

preme Court Rules would have required the specific reasons for the alleged feeling of prejudice by his client and not doing so and further by announcing in open court that his client has filed a complaint with the Courts Commission or Judicial Inquiry Board against me knowing full well that the Act creating the Courts Commission provides that such complaints are privileged and cannot be disclosed to anyone including the Respondent Judge unless and until a formal complaint is lodged, and further knowing that the only reason for the disclosure of this act by his client would be to taint these proceedings and encourage the Court to become prejudiced against his client or that it would most likely cause me to become prejudiced against his client and thereby accomplishing by indirection a substitution of judge when he could not do so by direction, I am making the following orders and have made the following orders:

First of all, that portion of the transcript of the proceedings as it relates to this disclosure and these remarks will be transmitted to the Attorney Registration & Disciplinary Commission for such acts against Mr. Marinaccio as they deem proper.

That a rule to show cause will issue against Mr. Marinaccio to show cause, if any he has, why he should not be held in contempt of this court for his attempting to directly influence the litigation before this Court—improperly influence the litigation before this Court.

Third, that an order will be prepared by Attorney Scott, Attorney Roberts, and Attorney Stogsdill and entered by this Court finding Mr. Marinaccio and Miss Langman responsible for all expenses, costs and attorneys' fees incurred by each of them or their clients as a result of this premature and improper termination of this cause.

That this cause will immediately be transferred to Judge Faris for all further proceedings, including the rule to show cause against Mr. Marinaccio which is to be heard at the conclusion of the pending matters and petitions."

A written order was entered on January 27, 1987, reflecting the trial court's pronouncements.

The cause was transferred to Judge Fredrick Henzi, and the wife and her attorney filed a motion to dismiss the rule to show cause and to vacate the order assessing costs and attorney fees against them. At the hearing of these motions, the wife and attorney Marinaccio testified, as did the wife's sister, and attorney Marinaccio's law part-

ner. Their testimony established that the wife had caused a letter to be delivered to the Judicial Inquiry Board on January 26, 1987, the date of the hearing on visitation rights, and that she did not discuss the letter with attorney Marinaccio. The wife's sister informed Mr. Marinaccio, during the hearing on visitation rights, that the wife had reported Judge Cox to the Judicial Inquiry Board. Attorney Marinaccio discussed the letter with his client and with his law partner, and they decided to disclose the letter to avoid any subsequent prejudice which may arise if the trial judge found out about it. The husband also presented the testimony of Judge Cox, who described what had occurred during the hearings on January 26 and 27, 1987. After hearing the evidence presented, Judge Henzi determined that it was insufficient to sustain a finding of contempt for attempting to improperly influence the outcome of litigation, and on May 4, 1987, an order was entered dismissing the rule to show cause and discharging attorney Marinaccio and the wife.

On June 1, 1987, the cause came on before Judge Henzi for a hearing on petitions of the husband, the paternal grandparents, and the attorney of the minor child, for attorney fees, as ordered by Judge Cox on January 27, 1987. The wife and attorney Marinaccio renewed their motion to vacate the January 27, 1987, order based on the court's prior finding that there had been no attempt to improperly influence the court and discharging the rule to show cause. This motion was denied, and, after hearing evidence on the petitions for attorney fees incurred in the aborted hearings, Judge Henzi awarded the minor child $1,080, the paternal grandparents $1,026, and the husband $1,980 for attorney fees incurred in the aborted hearings. A written judgment was entered on June 1, 1987, in which the court found there was no just reason to delay enforcement or appeal, pursuant to Supreme Court Rule 304(a) (107 Ill. R. 304(a)).

The record further discloses that on June 26, 1987, the trial court entered orders staying enforcement of the judgment for fees pending appeal, dismissed with prejudice the wife's pending petition to restrict paternal grandparent visitation of the child and set trial of all other pending matters to commence November 9, 1987. On July 1, 1987, the wife and attorney Marinaccio filed their notice of appeal from the orders entered on January 27, 1987, directing attorney Marinaccio to show cause and assessing attorney fees against attorney Marinaccio and his client, the wife. Appeal was also taken from the judgment entered on June 1, 1987, for the amounts of the fees so assessed.

■■ Even though not raised by any party, we have an obligation to consider whether this court has jurisdiction to hear the appeal.

(*Archer Daniels Midland Co. v. Barth* (1984), 103 Ill. 2d 536, 539, 470 N.E.2d 290.) The appellate court lacks jurisdiction, subject to certain exceptions not applicable here (see Supreme Court Rules 306 through 308 (107 Ill. 2d Rules 306 through 308)), to review judgments or orders which are not final. (*Flores v. Dugan* (1982), 91 Ill. 2d 108, 112, 435 N.E.2d 480.) A nonfinal judgment does not become final and appealable merely because of a finding by the trial court under Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) that there is "no just reason for delaying enforcement or appeal." (*George D. Hardin, Inc. v. Village of Mount Prospect* (1983), 99 Ill. 2d 96, 100-01, 457 N.E.2d 429; *Gutenkauf v. Gutenkauf* (1979), 69 Ill. App. 3d 871, 873, 387 N.E.2d 918.) An order is final so as to be appealable "if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 171, 429 N.E.2d 483; *Prairie Material Sales, Inc. v. White Diamond, Inc.* (1987), 157 Ill. App. 3d 779, 781, 510 N.E.2d 1236.) An order which leaves the cause pending and undecided is not a final order. *Pottorf v. Clark* (1985), 134 Ill. App. 3d 349, 351, 480 N.E.2d 533; *Oak Brook Bank v. Citation Cycle Co.* (1977), 45 Ill. App. 3d 1053, 1057, 360 N.E.2d 458.

■ It is somewhat difficult to ascertain from the record the basis upon which the fees were assessed by the court against the wife and on what authority her attorney was also assessed, as the rule to show cause against them was discharged without a finding of contempt. (See *In re Marriage of Wilde* (1986), 141 Ill. App. 3d 464, 470, 490 N.E.2d 95.) It has also been held that causing a mistrial does not give rise to liability for attorney fees, absent an agreement between the parties or statutory authority. *Central Illinois Public Service Co. v. Westervelt* (1976), 35 Ill. App. 3d 777, 782, 342 N.E.2d 463, *aff'd* (1977), 67 Ill. 2d 207, 367 N.E.2d 661; see also *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 166-67, 390 N.E.2d 859.

■ It appears to us that the trial court's order directing the wife, and her attorney, to pay a total of $4,112 in attorney fees to the opposing parties arose solely out of the contempt proceeding, rather than in the still pending post-decree matters. In order to assess attorney fees against one spouse in favor of the other the court must first consider the financial resources of the parties (Ill. Rev. Stat. 1985, ch. 40, par. 508) and did not do so here. Similarly, to award fees to a guardian *ad litem*, the court must consider the circumstances of the parents, and other factors (Ill. Rev. Stat. 1985, ch. 40, par. 506; *In re Marriage of Soraparu* (1986), 147 Ill. App. 3d 857, 864, 498 N.E.2d 565), and did not do so here. In neither circumstance does the Illinois

Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 101 *et seq.*) authorize an award of fees against an attorney, rather than a party. We conclude that to have any semblance of validity the trial court must have considered that the fees awarded were as a result of the conduct of the wife and her attorney considered in the contempt proceedings rather than arising from the related post-decree matters.

However, after considering the evidence relating to the aborted hearing, the trial court dismissed the rule to show cause entered against the wife and her attorney and discharged them. Inexplicitly, the court declined to vacate the order earlier entered finding these parties to be responsible for fees incurred by the other parties as a result of the mistrial and entered the assessment against them.

■■ ■ Having determined that the order for fees from which this appeal is taken arose from the contempt proceeding, we conclude that it was final and appealable. In *Kazubowski v. Kazubowski* (1970), 45 Ill. 2d 405, 259 N.E.2d 282, the court stated:

> "This court has also recognized that ordinarily an adjudication in a contempt proceeding is final and appealable because it is an original special proceeding, collateral to, and independent of, the case in which the contempt arises where the imposition of the sanction does not directly affect the outcome of the principal action." 45 Ill. 2d at 414-15.

See also *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 172, 429 N.E.2d 483; *Davis v. Bughdadi* (1983), 120 Ill. App. 3d 236, 240, 458 N.E.2d 177.

On consideration of the merits of this appeal we conclude that the orders assessing attorney fees and costs against the wife and her attorney must be reversed. As earlier discussed, there was no basis for charging fees against either party, as the rule to show cause was discharged. It is also apparent in this case that neither the attorney nor guardian *ad litem* fee provisions of the Marriage Act were implicated in the orders from which this appeal as taken.

Accordingly, the judgment of the circuit court is reversed.

Reversed.

INGLIS and REINHARD, JJ., concur.