*In re* MARRIAGE OF JOANNE STOCKTON, n/k/a Joanne Griffith, Petitioner-Appellant, and STEPHEN STOCKTON, Respondent-Appellee.

Fourth District   No. 4—87—0689

Opinion filed April 28, 1988.

Steven Nardulli and Daniel Maher, both of Stratton, Dobbs, Nardulli & Lestikow, of Springfield, for appellant.

Larry A. Apfelbaum, of Thomson & Weintraub, of Bloomington, for appellee.

JUSTICE LUND delivered the opinion of the court:

The marriage between petitioner Joanne Stockton, n/k/a Joanne Griffith, and respondent Stephen Stockton was dissolved on August 31, 1984. A supplemental judgment as to ancillary matters was entered in the fall of 1985. In March 1987, respondent filed a petition to modify child support pursuant to section 510 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1985, ch. 40, par. 510), and a petition seeking contribution from petitioner for college educational expenses pursuant to section 513 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 513). Following orders entered by the circuit court of McLean County, petitioner appeals. We reverse and remand.

Petitioner and respondent were married for almost 16 years before a judgment of dissolution was entered in 1984. The parties have two children, Stacey and Richard, who were both minors at the time of the dissolution. In the supplemental judgment, petitioner was given permanent custody of both children. Respondent was ordered to pay $477.81 on a biweekly basis commencing May 31, 1985, for child support. There was no provision for termination of child support or payment of college expenses.

On March 20, 1987, respondent filed two petitions. One petition sought modification of child support because the oldest child, Stacey, had resided with respondent since June 1986. Also, Stacey was graduating from high school in June 1987 and was planning on attending the University of Missouri beginning in August 1987. The second petition asked for contribution from petitioner for Stacey's college ex-

penses. Petitioner filed a response to the petition to modify child support. She stated that Stacey had turned 18 years old in February 1987 and had elected to reside with respondent. The remaining child, Richard, was still a minor and continued to live with petitioner. Petitioner alleged that respondent's income had increased substantially since the dissolution, and the biweekly child support payment of $477.81 was now equal to 20% of respondent's net biweekly income. She also requested that respondent pay her attorney fees.

A hearing was held in June 1987 at which time evidence was produced regarding both petitions. Respondent, who serves in an executive capacity with State Farm Insurance Company, is paid on a biweekly basis. His pay receipts for 1987 up through May 1 were admitted into evidence. Respondent's income had increased steadily through the year, and his last two pay receipts showed a gross income of $4,146. Petitioner's counsel calculated this to be over $107,000 if computed on an annual basis. This represented a substantial increase from the date of dissolution. In 1984, respondent's gross income from all sources was approximately $80,000. In addition, respondent testified that he received approximately $1,200 to $1,300 in additional yearly income from various securities valued at about $10,000. Respondent had an interest in an incentive and thrift plan with his employer currently valued at $15,944. Respondent had some $3,500 in various bank accounts. The house respondent owned was valued at $167,525 but had a mortgage of $125,808. Respondent testified that his current wife had provided $31,000 as a down payment on the house, and he had given her a promissory note for that same amount. He had other debts of approximately $17,000.

Petitioner testified regarding her income and assets. For the most part, petitioner did not work outside the home during her marriage to respondent. She and respondent worked on a joint venture which brought additional income to the family, but there was no testimony that this produced significant income. Petitioner received maintenance following the dissolution until she remarried. She had a bachelor's degree in advertising from Northwestern University and was currently employed in two jobs. Her estimated income for 1987 was $10,800. She had hopes that one of the jobs would blossom into a career-oriented position. In essence, she had begun searching for a career following the dissolution of her marriage. She was the sole owner of the former marital residence valued at $95,400. The home was encumbered in the amount of $34,000. She had additional assets of about $1,170 and debts of $2,300. Stacey worked part time, but her income was not significant.

Both parties submitted calculations of Stacey's estimated college expenses for 1987-88. The trial court accepted petitioner's higher figure of approximately $12,400. Petitioner supplied the court with figures representing her expenditures for the support of her children in 1986. She calculated her support for Richard at $9,221.84. She testified that, outside of the support she received from respondent, she was the sole provider of support for Richard. Her expenditures for Stacey were $5,228.49.

In a letter to both attorneys, the court found as follows:

"Respondent paid $12,402 in child support in 1986, at the rate of $477.18 per two weeks, which was based on the assumption that both children would be living with petitioner. Because of raises in his salary, that bi-weekly rate is now about 20% of his net income, which is the statutory percentage for one child. If he continues to pay that amount of child support plus another $12,374 per year, which petitioner estimates to be the entire amount of expenses for college for the daughter, this will amount to 40% of his $62,000 annual net income.

Petitioner presented evidence that the entire expense of all support for the minor son in 1986, totalled $9,221.64, which would mean a bi-weekly cost of $354.69. Therefore, this actual cost of the entire support of the son is less than 20% of respondent's net income.

The gross income of respondent is ten times that of petitioner. A ratio of 10 to 1 would appear to be an equitable way to allocate the support for the minor child of the parties and the college education expenses of the adult child as between the parents.

On this basis, petitioner would be responsible for $1,240 and respondent for $11,160 of the estimated college expenses. Also, respondent would be obliged to pay for support of the minor child $319.22 per two weeks (90% of $354.69) beginning with the next payment date following entry of an order submitted by counsel in accordance with the rulings indicated in this letter."

An order was entered on July 16, 1987, setting biweekly child support payments at $319.22 for Richard. The order denied an award of attorney fees for petitioner. The order stated that a further order regarding college expenses would be forthcoming, but the order included a finding that no just reason existed to delay enforcement or appeal. Petitioner filed a motion to reconsider, which was eventually denied.

On September 9, 1987, the court issued its order regarding

Stacey's college expenses. Petitioner was ordered to pay $1,240 toward Stacey's college costs. This was to be paid directly to the University of Missouri as part of Stacey's second semester tuition fee. Respondent was ordered to pay the remainder of Stacey's educational expenses.

Petitioner filed her notice of appeal on October 1, 1987, appealing the order of July 16, 1987, as well as the order of September 9, 1987.

■ Initially, we deal with a question raised regarding the timeliness of the appeal. Respondent has filed a motion to dismiss that part of the appeal which deals with the order of July 16, 1987. He alleges that portion of the appeal is untimely because in the order of July 16, 1987, the court made a finding pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) and more than 30 days passed before petitioner filed her appeal of that order. See *Elg v. Whittington* (1987), 119 Ill. 2d 344, 518 N.E.2d 1232.

We find the issues involved in both petitions interdependent and that our decision should be controlled by *In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 449 N.E.2d 137. In *Leopando*, an order was entered in a dissolution proceeding which addressed only the issue of child custody. A finding was made pursuant to Rule 304(a), as in the instant case. The trial court, in *Leopando*, reserved for future consideration the matters of maintenance, property division, and attorney fees. The supreme court stated that matters raised in a dissolution proceeding are interrelated:

"A petition for dissolution advances a single claim; that is, a request for an order dissolving the parties' marriage. The numerous other issues involved, such as custody, property disposition, and support are merely questions which are *ancillary* to the cause of action. [Citation.] They do not represent separate, unrelated claims; rather, they are separate issues relating to the *same* claim. In fact, it is difficult to conceive of a situation in which the issues are more interrelated than those involved in a dissolution proceeding. Should the trial court decline to grant the petition for dissolution, no final relief may be obtained relevant to the other issues involved. On the other hand, where a dissolution of marriage is granted, a determination as to which party receives custody will necessarily affect how much, if any, support and maintenance are paid. Practically speaking, then, until all of the ancillary issues are resolved, the petition for dissolution is not fully adjudicated." (*Leopando*, 96 Ill. 2d at 119, 449 N.E.2d at 140.)

The court noted the policy behind Rule 304(a), which discourages

piecemeal litigation, and held that resolution of any of the separate issues involved in a dissolution proceeding did not constitute an order final as to a claim, despite the presence of Rule 304(a) language. *Leopando*, 96 Ill. 2d at 120, 449 N.E.2d at 140.

Respondent cites two other supreme court cases which we find distinguishable. *In re Custody of Purdy* (1986), 112 Ill. 2d 1, 490 N.E.2d 1278, dealt with a post-judgment petition for change of custody. The court ordered a change of custody from mother to father. The order, effective September 22, 1984, discussed the mother's visitation rights, but reserved ruling on summer visitation which was to begin in the summer of 1985. The mother appealed the change of custody order. The supreme court determined that all matters related to the change of custody had been decided, except the distant issue of summer visitation. The court noted that such visitation was always subject to revision and found that the timeliness of the appeal did not conflict with the policy against piecemeal litigation. The second case is *In re Marriage of Cannon* (1986), 112 Ill. 2d 552, 494 N.E.2d 490. In *Cannon*, the trial court dissolved the marriage by an order entered in December 1983, and by order entered in July 1984, determined the remaining ancillary matters. The maintenance provision reserved the possibility of court review of maintenance for a two-year period. The supreme court determined that the inclusion of a period of review did not render the order unappealable. The court again distinguished *Leopando* on the grounds that all issues had been decided. The period of review was merely incidental to the other issues. *Cannon*, 112 Ill. 2d at 556, 494 N.E.2d at 492.

We believe the principle involved is preventing piecemeal appeals from matters which are interrelated and should properly be decided together. In the instant case, we are passing upon two petitions which involve issues that affect one another. One petition asks for a reduction of child support, in part, because the daughter is attending college, thereby incurring significant educational expenses. The second petition requests contribution for the education costs. The same evidence of the financial assets of the parties determines the result of each petition. The evidence was produced at one hearing. The court made its findings in its letter of June 26, 1987, and related the amount of child support for the youngest child to the added burden of paying for a year of college for the elder daughter. The matters are interrelated and dependent upon each other. They constitute a single claim, and Rule 304(a) has no application. It is only common sense that they be decided together. Therefore, we hold that *Leopando* applies to post-dissolution proceedings. When a petition or petitions are

filed which seek modification of issues determined in the dissolution proceedings, all matters which are interrelated, that is, where the resolution of one affects the outcome of the other, must be determined before an appeal may be filed. We deny the motion to dismiss.

We may now address the merits of petitioner's arguments. On appeal, petitioner alleges the following errors: (1) the trial court erred in computing respondent's net income; (2) the trial court erred in setting respondent's child support payments; (3) the trial court erred in ordering petitioner to pay a portion of Stacey's college expenses; and (4) the court abused its discretion in not awarding petitioner her attorney fees.

■ The first question is whether the trial court correctly found respondent's annual net income to be $62,000. At the hearing, respondent testified that his biweekly gross income was $4,146, and submitted pay receipts verifying this figure. Petitioner's attorney on cross-examination calculated respondent's annual gross income to be $107,000 by multiplying the biweekly figure by 26. In his testimony, respondent simply deferred to counsel's calculations. In its letter of June 26, 1987, the court found respondent's net annual income to be $62,000 without explaining how the figure was calculated. The motion to reconsider the order regarding child support was heard on August 19, 1987. At that hearing, the trial court stated the $62,000 figure was also calculated from the most recent pay receipts. Deducting respondent's withholding for Federal and State taxes and the Social Security (FICA) payment from $4,146 and multiplying by 26 roughly equals $62,000.

Petitioner argues this computation is erroneous for several reasons. Respondent's most recent pay receipt included deductions for FICA. However, the FICA contribution applies only to the first $43,800 of wages in 1987, up to a maximum payment of $3,131.70. Respondent's net income increased by nearly $600 per month when he reached the maximum. For that reason alone, respondent's net income figure is significantly inaccurate. We recognize that we are dealing with an income that is above average. In addition to changes caused by FICA, respondent has certain options he may make which can vary the net figure appearing on his pay receipts. For that reason, it is a better practice to provide some expert testimony, such as from an accountant or financial adviser, who could provide a reliable estimate of an annual net income from the information provided on one or two biweekly pay receipts. The burden of providing such evidence lies with the parties and not with the court.

We need not be concerned with the net income figure in the

present case. The court chose to rely on other evidence to go below the statutory guidelines for child support. (See Ill. Rev. Stat. 1985, ch. 40, par. 505(a).) Therefore, although the calculation of respondent's net income was not sufficiently precise to make a determination of child support based on percentage of net income, we find petitioner is not prejudiced by the inaccuracy, as our holdings below indicate.

■ The second alleged error relates to the trial court's determination of respondent's child support obligation for Richard. Respondent filed a motion to modify his child support payment pursuant to section 510 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 510). Modification of child support involves the threshold question of whether a substantial change in circumstances has occurred. (*Fedun v. Kuczek* (1987), 155 Ill. App. 3d 798, 801, 508 N.E.2d 531, 533; *In re Marriage of Morrisroe* (1987), 155 Ill. App. 3d 765, 770, 508 N.E.2d 464, 468.) When determining whether there is sufficient cause to modify, courts consider both the circumstances of the parents and the circumstances of the children. (*Fedun,* 155 Ill. App. 3d at 801, 508 N.E.2d at 533.) In the present case, both parents have incomes substantially higher than at the time of dissolution. The children's circumstances are also different. Petitioner has only one child living with her. The other child, Stacey, is attending the University of Missouri and is residing with respondent when she is not in school.

Once it is determined a modification is required, the court should consider the factors set forth in section 505 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 505). (*Fedun,* 155 Ill. App. 3d at 801-02, 508 N.E.2d at 534.) Section 505(a) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)) provides the formula for determining child support payments, and states, in part:

"(1) The Court shall determine the minimum amount of support by using the following guidelines:

| Number of Children | Percent of Supporting Party's Net Income |
|---|---|
| 1 | 20% |

\* \* \*

(2) The above guidelines shall be applied in each case unless the court, after considering evidence presented on all relevant factors, finds a reason for deviating from the guidelines. Relevant factors may include but are not limited to:

(a) the financial resources of the child;

(b) the financial resources and needs of the custodial parent;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved;

(d) the physical and emotional condition of the child, and his educational needs; and

(e) the financial resources and needs of the non-custodial parent.

If the court orders a lower award, based on consideration of the factors in paragraphs (2)(a) through (2)(e) of subsection (a) of this Section, it shall make express findings as to its reason for doing so. The guidelines may be exceeded by the court without express findings, or by agreement of the parties."

The modification of child support lies within the sound discretion of the trial court, and the trial court's modification will not be disturbed on appeal, absent an abuse of discretion. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229, 1233.

Petitioner argues the trial court erred in setting child support payments of $319.22, which is well below 20% of respondent's net income. Petitioner argues the trial court was required to make express findings before setting an award below the statutory guidelines, and that it did not do so. In essence, petitioner contends the trial court looked solely to the figure petitioner provided for the support of Richard in 1986 ($9,221.84), and that the court should have considered the other factors listed in section 505(a). Respondent argues the court need not fix child support according to the guidelines in a petition for modification; that the guidelines apply only to a dissolution proceeding. Respondent also argues the court considered all the evidence, and the child support determination was not an abuse of discretion.

■ The parties have pointed out a disagreement among the courts as to whether the recent amendments to section 505(a) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)), including the addition of statutory guidelines for determining child support, should be incorporated into petitions for modification filed pursuant to section 510 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 510). We find the better approach is to require courts to consider the statutory guidelines as part of a modification analysis. This approach comports with the principle that courts consider the same factors they considered in formulating the original support order. (*Fedun*, 155 Ill. App. 3d at 802, 508 N.E.2d at 534; *In re Marriage of Roth* (1981), 99 Ill. App. 3d 679, 682, 426 N.E.2d 246, 249.) We, therefore, agree with those cases which adopt this analysis either explicitly or implicitly. *In re Marriage of Dodge* (1986), 150 Ill. App. 3d 486, 499, 501 N.E.2d 1354, 1363; *In re Marriage of Blaisdell* (1986), 142 Ill. App. 3d 1034, 1039-42, 492 N.E.2d 622, 626-27; *In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 918-19, 483 N.E.2d 692, 700-01; but see *Deardeuff v. Dear-*

*deuff* (1986), 149 Ill. App. 3d 406, 500 N.E.2d 992.

As to the particular analysis applied in the instant case, we find the court had sufficient cause for deviating from the guidelines, but the court thereafter considered an improper element in setting the final figure. We must, therefore, reverse and remand for reconsideration.

The court principally relied on petitioner's detailed statement of costs attributable to Richard in setting respondent's child support payment. The court initially considered the burden of paying for a college education coupled with the approximate figure respondent would pay according to the guidelines. The court found this burden excessive in light of petitioner's actual expenditures for Richard. Petitioner had included in her statement one-third of all the household expenses as a cost of supporting Richard. We note that assigning a straight percentage of household costs to a boy of 12 years of age results in an exaggerated figure of support. The benefits to such a child are not equivalent to the benefits to adults for such things as house payments, real estate taxes, homeowners insurance, home improvements, heat, electricity, water, gasoline, and auto insurance. The trial court accepted petitioner's calculations without question. There was no evidence that Richard was living a life-style incompatible with the status of his parents. We find sufficient justification for departing from the guidelines based on this record. The court then apportioned 90% of petitioner's figure to respondent based on the ratio of the parties' gross incomes. This computation we find to be an abuse of discretion. There is no statutory basis for utilizing a computation involving a ratio of income. While there may be no effective harm to the parties in the instant case, this type of analysis sets a precedent we cannot condone. Section 505(a) provides for separate consideration of the incomes of the custodial and noncustodial parents. In sum, the court was within its discretion in considering the actual costs of supporting a minor child and the expenses of a college education for an adult child as factors supporting its determination to set child support below the statutory guidelines. The court was without justification for apportioning the final child support figure based on a ratio of the parties' gross incomes. Therefore, we must reverse and remand. We wish to make it clear that we are objecting solely to the method used by the court, and upon remand, the court is free to set a figure of support in accordance with its sound use of discretion.

■ Petitioner's next contention is that the trial court erred in requiring her to contribute to Stacey's college expenses. She contends that respondent's income is so much greater than hers that he should

bear the full burden. The awarding of educational expenses is within the discretion of the trial court. (*In re Support of Pearson* (1986), 111 Ill. 2d 545, 551, 490 N.E.2d 1274, 1277; *Singer v. Singer* (1979), 70 Ill. App. 3d 472, 474-75, 388 N.E.2d 1051, 1053-54.) The factors the court is to consider are the financial resources of both parents, the financial resources of the child, and the standard of living the child would have enjoyed had the marriage not been dissolved (Ill. Rev. Stat. 1985, ch. 40, par. 513). We find the court's use of an apportionment based on a ratio of the gross incomes to be an abuse of discretion for reasons stated above.

■ Finally, petitioner argues the trial court abused its discretion in not requiring respondent to pay her attorney fees. Further, petitioner has retained new counsel for her appeal, and she has filed a motion with this court requesting that respondent pay these attorney fees also. The award of attorney fees is a matter within the sound discretion of the trial court, and its decision will not be disturbed on appeal, absent an abuse of discretion. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299, 483 N.E.2d 1229, 1235.) The propriety of an award of attorney fees is dependent upon a showing by the party seeking them of an inability to pay, and a demonstration of the ability of the other spouse to do so. (*Bussey*, 108 Ill. 2d at 299-300, 483 N.E.2d at 1235.) We find no abuse of discretion by the trial court in requiring petitioner to pay her own attorney fees. While the parties' incomes differ significantly, petitioner has not shown she is unable to pay her own expenses. She had sufficient assets to pay her attorney fees.

■ As to her motion for attorney fees pertaining to this appeal, this is a matter which must be determined by a petition brought before the trial court. Cases interpreting the old divorce act (see Ill. Rev. Stat. 1975, ch. 40, par. 1 *et seq.*) made it clear that the appellate court did not have jurisdiction to award attorney fees, but jurisdiction was limited to a review of such an award. (*Buehler v. Buehler* (1940), 373 Ill. 626, 628, 27 N.E.2d 466, 467; *Lamkin v. Lamkin* (1976), 43 Ill. App. 3d 422, 427, 356 N.E.2d 1265, 1269; *White v. White* (1976), 41 Ill. App. 3d 758, 763, 354 N.E.2d 486, 489.) In a recent decision involving a request for fees from our court under section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611), we held the appellate court was without authority to make such an award. (*Darnall v. City of Monticello* (1988), 168 Ill. App. 3d 552.) The supreme court has the exclusive power to provide by rule for procedure in the appellate court. No rule existed for an award of fees and costs pursuant to section 2—611. Similarly, although the Act

provides for payment of attorney fees for "[t]he defense of an appeal" (Ill. Rev. Stat. 1985, ch. 40, par. 508(a)(3)), the supreme court has not provided the appellate court with the authority to make an initial award of attorney fees. The appellate court is not a fact-finding body, and the question of attorney fees on appeal is a matter properly left to the sound discretion of the circuit court. Any award of attorney fees relating to this appeal will necessarily follow the filing of a petition on the trial level.

For the reasons stated above, we reverse the orders of the circuit court of McLean County and remand the orders for reconsideration on the issues of child support and payment of college expenses.

Reversed and remanded.

GREEN, P.J., and SPITZ, J., concur.